**Om AHUJA and Om Electronic Systems Corp., Plaintiffs,**

v.

**Richard LAIRD and Keptel, Inc., Defendants.**

**Civ. No. 86–2443 (GEB).**

United States District Court, D. New Jersey.

Aug. 2, 1988.

**MEMORANDUM AND ORDER**

GARRETT E. BROWN, Jr., District Judge.

This matter is before the Court on defendants' Richard Laird and Keptel, Inc.

motion to enforce the previous judgment of the Court and to hold plaintiffs in contempt, and plaintiffs' cross motions for sanctions pursuant to FED.R.CIV.P. 11 and to enforce Section 3.9 of the Exclusive License Agreement. In addition, the parties have filed timely objections to the Report and Recommendation filed in this matter by the Honorable John W. Devine, United States Magistrate, on June 6, 1988. This opinion, issued pursuant to FED.R.CIV.P. 78 without oral argument, resolves defendants' motion, plaintiffs' cross-motions, and the objections to Judge Devine's Report and Recommendation.

*Defendants' Motion to Hold Plaintiffs in Contempt*

 The basis for defendants' motion concerns plaintiffs' abandonment of U.S. Patent Application Serial Number 051, 507 entitled "Polarity Ring Director." According to the Certification of Bruce J. Edington filed in connection with defendants' motion, defendants were granted an exclusive license of the patent in question pursuant to the Exclusive License Agreement, which plaintiffs failed to protect as it was ordered abandoned by the Patent Office on April 8, 1988. Thus, defendants allege that "the Om plaintiffs have failed to protect the application in accordance with the Exclusive License Agreement previously ordered enforced by [this] Court."

In opposition, plaintiffs argue that the patent was "unintentionally abandoned" and that they have fully complied with 37 C.F.R. § 1.137(b), Revival of Abandoned Application. That regulation provides in relevant part that:

An application as unintentionally abandoned for failure to prosecute ... may be revived as a pending application if the delay was unintentional. A petition to revive an unintentionally abandoned application must be filed within one year of the date on which the application became abandoned or be filed within three months of the date of the first decision on petition to revive under Paragraph (a) of this section which was filed within one year of the date of abandonment of the application. A petition to revive an unin-

tentionally abandoned application must be accompanied by: (1) A statement that the abandonment was unintentional; (2) A proposed response unless it has been previously filed; and (3) A petition fee as set forth in § 1.17 m.

The affidavit of Alton W. Payne, submitted by plaintiffs, states that reviving an unintentionally abandoned patent is purely an administrative matter, and that on September 9, 1987, the petition to revive was filed. In addition, the affiant states that he spoke to the examiner in the patent office responsible for this patent and was informed that the examiner "foresaw no problem with the present application being revived." Moreover, the affiant states that he received confirmation on May 31, 1988, and "that the Petition to Revive the unintentionally abandoned application has been granted." A copy of the confirmation is attached as Exhibit A to the affidavit. Thus, as the patent has been revived, the issue is now moot.

*Plaintiffs' Cross Motions for Sanctions and to Enforce Compliance with Section 3.9 of the Exclusive License Agreement*

 Plaintiffs have cross moved for sanctions in connection with defendants' contempt motion. Plaintiffs argue that as revival applications are granted as a matter of course and as defendants knew that plaintiffs had filed all the necessary documentation for revival, defendants' motion is not well grounded in law or fact. Plaintiffs also argue that a reasonable investigation would have disclosed "that there was overwhelming legal basis upon which to base the revival of the present application."

Defendants' actions in filing the contempt motion do not warrant sanctions. 37 C.F.R. § 1.137(B) does not state that petitions for revival are *automatically* granted once the required documentation is provided. For example, the provision provides in pertinent part: "The Commissioner may require additional information where there is a question whether the abandonment was unintentional." *See also Manual of Patent Examinory Procedure* (denoted as Exhibit E attached to plaintiffs' brief): "*Generally,* a statement that the abandon-

ment was unintentional, plus the proper extension fee, and the proposed response is all that is required." (emphasis supplied). There is no time limit imposed upon the Commissioner to make his decision. Due to the chronological events outlined in Mr. Edington's Certification, the Court cannot conclude that it was unreasonable or frivolous for defendants to file their contempt motion.

*Plaintiffs' Motion to Enforce Section 3.9*

Section 3.9 of the Exclusive License Agreement, which this Court ordered enforced in an earlier opinion, provides:

> Within thirty (30) days after the end of each consecutive three (3) month period beginning with June 30, 1987, KEPTEL SHALL FURNISH TO LICENSORS a written report setting forth the total NET SELLING PRICE of each LICENSED PRODUCT sold during each such consecutive three (3) months period by KEPTEL and any KEPTEL AFFILIATE, showing the number of each LICENSED PRODUCT sold, adjustments to the NET SELLING PRICE of each product, if any, the NET SALES for each country, the manner of calculating earned royalty due from sales in each country, the earned royalty due, and the balance of the advance payments, if any, under Paragraph 3.1(b) and/or 3.12. Each written statement shall be accompanied by a check in payment of the full amount of the earned royalty due.

Defendants, in opposition, state that they are complying with Section 3.9. In their reply brief, defendants represent to this Court that:

> Plaintiffs are aware that defendants have determined the amount of royalties owed to the plaintiffs for all products sold to date pursuant to the terms of the Exclusive License Agreement. Plaintiffs are further aware that defendants requested additional time to supply supporting documentation for the above figures. Said supporting documentation will include: the invoice number of each product sold, the total number of each product sold, a description of each product, along with additional requirements

set forth in Section 3.9 of the Exclusive License Agreement. *All supporting documentation will be available on or about the return date of this motion.* (emphasis added)

As such, based on defendants' representation, this issue is also moot.

*Report and Recommendation*

This matter was referred to Judge Devine on Scully, Scott's petition for an order pursuant to FED.R.CIV.P. 69(a) and N.J.S. A. 2A 13–5 for a determination of the amount of an attorney's lien between plaintiffs Om Ahuja and Om Electronic Systems Corp. and petitioner. Judge Devine entered his Report and Recommendation on June 6, 1988. The petitioner, plaintiffs and defendants have each filed objections which the Court will consider in turn.

*Petitioner's Objections*

■ Petitioner objects to two aspects of the Report and Recommendation. First, petitioner objects to Judge Devine's finding that petitioner's contingency fee was calculated before subtracting amounts for disbursements. *See* Report and Recommendation at 14–15. In other words, petitioner argues that it should be compensated for its disbursements before calculation of the contingency.

Judge Devine cited the contingency provision of the Retainer Agreement which provides for payment of

> one third of the proceeds of any settlement and/or judgment ... [unless] the law firm's actual fees and disbursements are in excess of one third amount, then the LAW FIRM shall be entitled to its actual fees and disbursements, up to, but not exceeding 50 percent of the total recovery.

and concluded that "[a]s drafted, the Contingency clause of the Retainer Agreement seems to provide that the attorneys shall be paid either one third or 50% of the settlement and no more. Petitioner will not prevail even if it takes the position that there is an ambiguity on the question of disbursements under the Contingency provisions." Report and Recommendation at 15.

Petitioner, however, draws the Court's attention to the Fees and Costs portion of the Retainer Agreement wherein it states that Om shall be responsible for third party fees and costs. Thus, it is clear that the agreement in fact provided for the payment of third party disbursements. As such, Judge Devine's Report and Recommendation will be modified to allow petitioner to receive the unchallenged amount of $34,150 from the settlement fund before calculation of the contingency.

Second, petitioner objects to the portion of the Report and Recommendation wherein their desired modification was denied. Specifically, petitioner desires that "direct payments of petitioner Scully–Scott's one-third contingency of plaintiffs' royalties be made directly to the law firm from defendant Keptel, rather than relying on plaintiffs to forward the proper contingency percentage of royalties due petitioner each year by virtue of the Retainer Agreement." Petitioner premises its objection "on the grounds that Keptel would be potentially subjected to multiple liability if the plaintiffs subsequently failed to make payment to Scully–Scott."

However, as noted by Judge Devine, the Agreement determines the procedure for modification and provides:

> This agreement constitutes the entire agreement between the parties hereto ... and any modifications of this Agreement shall be in writing and shall be signed by both parties.

The Court has not been presented with a modification in accordance with the procedure set forth in the Agreement. Thus, Judge Devine's recommendation is not clearly erroneous nor contrary to law. As such, the Court will not modify this aspect of the Agreement.

### Defendant's Objections

Defendants' sole objection to the Report and Recommendation is the same as petitioner's; namely, that the Agreement should be modified so that defendants forwarded the proper contingency percentage directly to petitioner. However, for the reasons set forth above, the Court will not modify the Report and Recommendation.

### Plaintiffs' Objections

Plaintiffs object to the portion of Judge Devine's report wherein it states that "as part of the proceeds of the settlement, under the Exclusive License Agreement, plaintiffs will receive royalties on all of the above listed devices, and petitioner, under the Contingency clause of the Retainer Agreement, will receive one-third of plaintiffs' royalties on *all* the above listed devices." Report and Recommendation at 17 (emphasis supplied). Plaintiffs argue that petitioner should receive royalties only on those patents "that ensued prior to its settlement negotiations."

The Retainer Agreement provides in relevant part "(i)n the event said applications are filed, and mature into patents before judgment or settlement, the law firm shall be entitled to the same percentage as set forth above with respect to any patent royalties received from any of the forgoing parties for the life of the patents." Settlement in this matter was effectuated on May 13, 1987, not August 14, 1987, the date of the Court's opinion as petitioner argues. *See* Opinion of August 14, 1987 at p. 7. As such, the only patent to which petitioner is entitled to royalties is U.S. Pat. No. 4,653,-084 (3/24/87).

Therefore, for the foregoing reasons;

It is on this 2nd day of August, 1988,

ORDERED that defendants' motion to hold plaintiffs in contempt is hereby denied; and it is further

ORDERED that plaintiffs' cross motion for sanctions be and is hereby denied; and it is further

ORDERED that the Report and Recommendation of Judge Devine entered in this matter be and is hereby adopted in its entirety with the modifications noted above.